MAXWELL, J., for the Court:
¶ 1. After an evidentiary hearing, during which Joshua Holliman and his former attorney testified, the circuit judge denied Holliman’s post-conviction challenges to the voluntariness of his guilty pleas and his negotiated sentences.
¶ 2. Rather than timely appeal the order denying his motion for post-conviction relief (PCR), Holliman sought an out-of-time appeal, which the circuit court denied. While Holliman argues we should ignore this procedural default, we find no good cause to grant an out-of-time appeal. Thus, we dismiss Holliman’s untimely appeal for lack of jurisdiction.
Facts and Procedural History
I. Guilty Pleas
¶ 3. The three guilty pleas Holliman attacks were negotiated between his former defense counsel and the State, as part of a package deal, aimed at limiting Holliman’s sentencing exposure. At the time of his now-challenged guilty pleas, Holliman faced six pending felony drug counts that contained enhanced and potential consecutive sentences.[1]
*940 ¶ 4. Working against the reality that if convicted his client would serve over fifty years’ imprisonment, day for day as a habitual offender, Holliman’s attorney was able to secure a plea agreement, resulting in considerably more lenient sentences than Holliman faced had he proceeded to trial. Holliman accepted the terms of the agreement and, on November 6, 2006, pled guilty to two counts of sale of a controlled substance — one for selling alprazolam (Xa-nax), the other for distributing cocaine — as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). He also pled guilty to one count of possessing a controlled substance in jail, which had been charged in a separate pending indictment against him. The circuit judge did not perform a proportionality analysis.[2] Yet Holliman accepted the State’s sentencing recommendation, which deviated well below the mandatory terms of imprisonment.
¶ 5. On the alprazolam-sale count, the judge sentenced Holliman to ten years’ imprisonment and ten years’ post-release supervision, instead of the required twenty years. And on the cocaine-sale count, the judge sentenced Holliman to five years’ imprisonment and twenty-five years’ post-release supervision, rather than the mandatory thirty-year sentence. These sentences were ordered to run concurrently with one another, but consecutively to previous sentences for a methamphetamine-possession conviction and an obtaining-controlled-substances-by-fraud conviction. They were also to be served concurrently with a seven-year sentence — five years to serve, two years’ post release supervision — for possessing a controlled substance in jail.
¶ 6. Also as a result of these negotiated pleas, the State agreed to remand to the file a pending marijuana-possession count and two other counts from a separate indictment, each charging possession of drugs in a jail. So Holliman’s agreed-upon total time to serve for the alprazolam and cocaine-sale charges and the possession-of-drugs-in-a-jail charge was essentially ten years, instead of fifty-seven as mandated by statute.
II. PCR Motion
¶ 7. Holliman did not indicate any disfavor with his agreed-upon pleas and sentences until almost three years later, when a few weeks before the limitations period had run, he filed a motion for post-conviction relief challenging his alprazolam-sale and cocaine-sale convictions in cause number CR 2005-0775CD. See Miss.Code Ann. § 99-39-5(2) (Supp.2012). The gist of his PCR motion was that his pleas were involuntary because he was coerced or misled to plead guilty. He also argued he was not competent to enter the pleas and that his attorney was constitutionally deficient. The circuit judge ordered an eviden-tiary hearing to address these issues.

A. Evidentiary Hearing

¶ 8. While Holliman had supported his PCR motion with affidavits from his mother, grandmother, and a bailiff — all attesting his attorney promised him a ten-year sentence, with five years to serve — the only testimony he offered at the hearing was his own. The State, however, called the attorney who had represented Holli-man at his plea hearing. And Holliman’s *941 former counsel strongly contradicted Holli-man’s claim.
¶ 9. When asked about the supposed sentencing guarantee of five years to serve, Holliman’s previous counsel made clear his discussions with Holliman “always involved time as a habitual offender under habitual-offender status.” Knowing there were certified copies of the prior convictions, the attorney explained, “There would have been no reason for me to have ever told him anything else.” He also described his conversations with Holli-man’s mother and grandmother as “center[ing] around reducing his time ... to the minimum exposure we could get, which was ten years. All of my conversations touched on and addressed very specifically habitual offender status.” After the attorney had reviewed discovery and interviewed undercover officers involved in the controlled purchases of drugs from Holli-man, it became a matter of “damage control.” As the defense attorney saw it, “the best strategy at that time was to reduce [Holliman’s] potential exposure.”
¶ 10. Though his former attorney had earlier asked for a competency evaluation, no evaluation was conducted. And the record shows Holliman intentionally withdrew or abandoned the request during his plea hearing. When accepting the guilty pleas, the judge thoroughly questioned Holliman and his counsel on the competency issue and found Holliman was competent to waive his right to trial and plead guilty.
¶ 11. In weighing the PCR testimony, the circuit judge found the record contradicted Holliman’s claims and that the attorney’s testimony was more credible than Holliman’s. So on August 26, 2010, the judge entered an order denying Holliman’s PCR motion.

B. Untimely Appeal

¶ 12. Holliman did not timely appeal the order within the mandatory thirty days. M.R.A.P. 4(a). Instead, over one year later, on October 17, 2011, Holliman petitioned the circuit court for an out-of-time appeal. His claimed reason for his tardy filing was that he did not receive notice of the entry of the judgment until July 12, 2011. The circuit judge denied Holliman’s request, finding that, under Mississippi Rule of Appellate Procedure 4(h), he lacked authority to grant an out-of-time appeal because more than 180 days had passed since entry of the order dismissing the PCR motion. Holliman now appeals from this ruling.
Discussion
¶ 13. We review a circuit court’s denial of an out-of-time appeal for abuse-of-discretion. Clayton v. Hartsog, 970 So.2d 248, 250 (¶ 4) (Miss.Ct.App.2007) (citing Pre-Paid Legal Servs. v. Anderson, 873 So.2d 1008, 1009 (¶ 4) (Miss.2004)).
I. Jurisdiction

A. M.R.A.P. i(a), (h)

¶ 14. Under Mississippi Rule of Appellate Procedure 4(a), a notice of appeal “shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.” However, the circuit court may reopen the time period for appeal “if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced[.]” M.R.A.P. 4(h). But it only has authority do so if the motion is “filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice[.]” Id.; see also Edmond v. State, 991 So.2d 588, 592 (¶ 18) (Miss.2008) (citing McGruder v. State, 886 So.2d 1, 2 (¶ 4) (Miss.2003)) (holding trial court has no jurisdiction to *942 consider motion for out-of-time appeal filed outside 180-day limitation).
¶ 15. Holliman eventually filed for an out-of-time appeal approximately 420 days after the entry of the judgment denying his PCR motion. And the judge properly recognized this procedural default and ruled that, based on the substantial passage of time, he lacked jurisdiction to grant an out-of-time appeal. So we find the judge did not abuse his discretion in denying an out-of-time appeal.

B. M.R.A.P. 2(c)

¶ 16. We do acknowledge, however, that in some instances, we may elect to exercise our discretion and suspend Rule 4(a)’s hard-edged thirty-day requirement for “good cause shown.” M.R.A.P. 2(c); see also Parker v. State, 921 So.2d 397, 399 (¶ 5) (Miss.Ct.App.2006) (Appellate courts may “grant a criminal defendant such an appeal if failure to perfect the appeal was ‘through no fault of his own’ and if ‘justice demands.’ ” (quoting McGruder, 886 So.2d at 2 (¶ 4))). But it is Holliman, not the State, who carries the burden of persuasion regarding lack of a timely notice. Denton v. State, 762 So.2d 814, 817 (¶ 6) (Miss.Ct.App.2000). Therefore, Holliman must show the delinquent filing was by no means his fault.
¶ 17. When the circuit court denied Holliman’s PCR motion by order dated August 24, 2010, it instructed the circuit clerk to mail a certified copy of the order to Holliman at the DeSoto County Jail. And on August 26, 2010, the day the order was entered, a certified copy was mailed to Holliman at the jail. Though the mailed order was not returned to the clerk as undelivered, Holliman contacted the clerk — over a year after the order had been entered — claiming he had never received notice of the order denying his PCR motion. He apparently requested another copy, which the clerk sent him on July 12, 2011.
¶ 18. Other than his own allegations, Holliman offers no proof the original mailing did not timely reach him. Still, Rule 4(h)’s comment explains that “a specific factual denial of receipt of notice rebuts and terminates the notion that mailed notice was received.” See also Forkner v. State, 852 So.2d 604, 606 (¶ 7) (Miss.Ct.App.2002). While this may be so, even if we accept Holliman’s denial of receipt, there is still a timing problem for which he shoulders at least some blame.
¶ 19. The new copy of the order was sent to Holliman on July 12, 2011. Yet he filed for an out-of-time appeal with the Mississippi Supreme Court on August 11, 2011, not the trial court “within 7 days of receipt of such notice,” as required. And the supreme court dismissed his motion with instructions that it be filed in the trial court. But rather than acting expeditiously, Holliman’s request for an out-of-time appeal was not filed in the circuit court until October 17, 2011, over a month later.
¶ 20. The entire delinquency spans well over a year from the date the circuit court originally mailed him the order denying his PCR motion, and around three months from the time he certainly received the motion. Even if some of the tardiness is excusable, we do not find he was without fault for the delinquent filing, particularly since he failed to timely seek an out-of-time appeal after receiving the second copy of the order.
¶ 21. Furthermore, after reviewing his specific PCR claims, we do not find, under Rule 2, that either good cause or the interests of justice demand an out-of-time appeal.
II. Indictment, Voluntariness of Plea, and Ineffective Assistance of Counsel
¶ 22. The first of his challenges concerns his indictment. But because Hoi- *943 liman’s indictment described each prior felony conviction, listed the related sentence, and cited each cause number, he was sufficiently informed of the specific prior convictions relied upon by the State in seeking habitual-offender status. See Benson v. State, 551 So.2d 188, 196 (Miss.1989); Mitchell v. State, 58 So.3d 59, 60-61 (¶¶ 6-10) (Miss.Ct.App.2011) (finding habitual-offender indictment was not defective for failure to cite dates of prior judgments where listed information provided access to dates of judgments). So no injustice arose from the particular notice provided for each qualifying conviction.
¶ 23. As to his coercion claim challenging the voluntariness of his guilty plea, we note that criminal defendants like Hol-liman face a “high hurdle in recanting” sworn statements from a plea hearing. Pevey v. State, 914 So.2d 1287, 1290 (¶ 8) (Miss.Ct.App.2005) (citing Calvert v. State, 726 So.2d 228, 231 (¶ 10) (Miss.Ct.App.1998)). And after reviewing Holliman’s responses to the judge’s thorough examination during the plea colloquy, we understand the judge’s reluctance to discount Holliman’s prior sworn representations about his understanding of the potential sentences he faced. When considered in combination with the attorney’s sworn testimony at the PCR hearing, we see no injustice in the circuit judge rejecting Hol-liman’s claims that his attorney coerced his guilty pleas through advice that he would be sentenced to ten years, but only have to serve five. Rather, the record and testimony completely belie this argument.
¶ 24. We also find the incredibly lenient plea deal, which essentially resulted in a ten-year sentence, when Holliman faced mandatory sentences of over fifty years, weighs heavily against finding injustice in the denial of his ineffective-assistance-of-counsel claim.
¶25. So none of these three claims expose an injustice of the type necessary to demand that we grant an out-of-time appeal.
III. Competency
¶ 26. Instead, our assessment of whether we should ignore our procedural appellate rules hinges mostly on whether injustice exists in the handling of Holli-man’s competency claim. After review we find no such injustice and that the issue was appropriately handled by the trial judge. Thus, we do not find good cause to circumvent the established time-bars and grant appellate review.
¶ 27. At some point after he initially met with Holliman, Holliman’s attorney requested a competency or mental evaluation, which the circuit judge ordered. Though it was his duty to do so, Holliman did not include a copy of this order in the appellate record. But it is undisputed that an order was entered granting some sort of mental evaluation. However, no evaluation was conducted, and ultimately Holli-man and his former attorney withdrew the request.
¶28. When withdrawing the request, Holliman and his attorney assured the judge the real concern motivating the request was Holliman’s longstanding drug use-not his competency. But now, in attempting to vacate- his guilt pleas and sentences, Holliman insists he lacked capacity to fully appreciate the consequences of pleading guilty.

A. Rule 9.06 and the Necessity for a Hearing

¶ 29. Convicting an accused while he or she is legally incompetent violates due process. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (citing Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)). If the evidence raises a bona fide *944 doubt about a defendant’s competency, the court’s failure to inquire into issues of competency deprives the defendant of his constitutional right to a fair trial. Id. at 385, 86 S.Ct. 836.
¶ 30. Under Pate, states must have adequate procedures to ensure a defendant is competent to stand trial. Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir.1980) (citing Pate, 383 U.S. at 378, 86 S.Ct. 836). To comply, Mississippi has adopted Rule 9.06:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court....
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
URCCC 9.06.
¶ 31. Our supreme court has strictly applied this rule, most recently addressing it in Coleman v. State, 2009-CT-01350-SCT, 2013 WL 3067576 (Miss. June 20, 2013) (on rehearing). In Coleman, the supreme court reversed this court’s remand for a retroactive competency hearing, where a competency evaluation had been completed and a competency hearing had been requested but not conducted before a defendant’s criminal trial. In doing so, the Coleman court emphasized its adherence to Rule 9.06’s language, instructing that a competency hearing must take place, before trial, once a mental examination has been ordered and completed. Coleman v. State, 2013 WL 3067576, at *5 (¶ 12) (citing URCCC 9.06). A pair of somewhat similar decisions, handed down in 2009, also hone in on Rule 9.06’s requirement that trial judges conduct a competency hearing after a mental evaluation is ordered and conducted. Jay v. State, 25 So.3d 257, 261-63 (¶¶ 24-35) (Miss.2009); Sanders v. State, 9 So.3d 1132, 1135-39 (¶¶ 12-25) (Miss.2009). While the facts of these three cases differ to some extent, their common mandate is that, once a trial judge has ordered a mental evaluation, some sort of competency hearing must be conducted before trial.
¶ 32. But what is required of a trial judge when an evaluation is ordered but not conducted, and then the attorney and defendant withdraw the request? This is the particular scenario the trial judge here faced. And after review, we find the judge ultimately complied with Rule 9.06, Coleman, Jay, and Sanders by doing what was required of him under each — conducting an on-the-record competency hearing before accepting Holliman’s guilty pleas.

B. Holliman’s Hearing

1133. At Holliman’s plea hearing, the judge questioned Holliman to ensure he was “competent” to plead guilty. Holli-man informed the judge he was neither under the influence of drugs or alcohol nor taking medications that affected his thinking. Holliman denied a history of mental illness or emotional problems. And throughout his colloquy with the court, Holliman repeatedly maintained that he knew what he was doing.
¶ 34. To further test Holliman’s appreciation of the circumstances, the judge inquired about Holliman’s educational background. Holliman assured the judge he could read and write. He also represented *945 he had read the plea petitions with his attorney and understood them.
¶ 85. As to his previous request for a mental evaluation, the defense attorney informed the court Holliman was no longer pursuing it. And when the judge questioned Holliman about his personal intentions to proceed, he too acknowledged he wanted to forgo the evaluation. In response to questions about his “satisf[action] that Mr. Holliman [was] competent to stand trial ... and to enter this plea of guilty pursuant to Rule 9.06,” the defense attorney represented he was satisfied of his client’s competency.
¶ 36. The lawyer next described his investigation into the “situation,” comparing Holliman’s previous demeanor with his in-court demeanor, which he termed as “significantly different.” He represented he now had no “difficulty explaining to [Holli-man] the contents of the plea petitions,” noting he had “involved Mr. Holliman’s family in this.” The defense attorney explained that Holliman was a long-time drug user going back to a young age and that Holliman was “much clearer” at the plea hearing than when he previously met with him. As the lawyer put it, “I’m convinced that he knows what we’re doing— that he makes this plea in his best interests, and that he fully understands what I’ve explained to him about these cases.” The judge also asked Holliman if he understood, and Holliman said he did.
¶ 37. The judge then focused on Holli-man’s request to waive the hearing:
The Court: Let me make sure, because first of all, apparently an Order has been entered but there’s been no examination; so I just want to make it clear as we’re sitting here, if you’re withdrawing that request, I want to make sure you know what you’re doing. Do you understand that you’re withdrawing your request to have a mental evaluation to determine your competence to stand trial and which, likewise, would determine your competence to enter into plea negotiations and enter into a plea and your pleading guilty. Do you understand that?
Holliman: Yes, Your Honor.
The Court: I’ve already gone over through these competency questions with you, but I want to go over it again. Do you know what you’re doing today?
Holliman: Yes, Your Honor.
The Court: All right. What has changed since that Order was entered until today? Was it a drug problem?
Holliman: It’s been a drug problem all my life, sir. Ever since I was nine years old, I’ve had a problem with drugs.
The Court: Mr. Holliman, the only person I can go to to determine if you’re competent today is you. And I take it you’re telling me you understand what you’re doing. Is that right?
Holliman: Yes, sir.
¶ 38. The judge then ensured that Hol-liman knew where he was and that he was aware of the substantial nature of the charges he was pleading guilty to. The court also went on record and discussed its assessment of Holliman:
The Court: All right. Although there has not previously been an examination, I will note for the record that I do find under Rule 9.06 ... that Mr. Holliman is competent to enter into this plea. I will note that there apparently has not been an examination — which in and of itself basically invokes the necessity of a hearing— but nevertheless, I’ve taken extra precaution in making sure that Mr. Holli-man is, in fact, competent. He’s answered the competency questions of *946 the Court, but I delved further, of course, to ask him about his understanding of the issues. He understands what he’s here for, [where] he’s at and what he’s doing. Certainly, if I find any indication as we go through this plea dialog that he does not understand, I will revisit the issue.
The State then recited detailed factual bases for each plea. And the court went through a meticulous inquiry about the proposed plea arrangement and sentencing recommendation. Holliman recalled the events leading to the variety of criminal charges and did not disagree with the State’s evidence. He also admitted his prior felony convictions qualified him as a habitual offender.
¶ 39. The judge next described the various rights Holliman was waiving by pleading guilty, and Holliman acknowledged he understood them. The judge also detailed the sentencing recommendation, and Holli-man represented that its terms met those of his agreement with the State. Holliman entered guilty pleas to three felony convictions, each of which was described in detail by the judge. The judge asked Holliman if it was his decision and his “decision alone to plead guilty.” And Holliman represented it was. Finally, the judge inquired of Holliman, “Are you asking me to accept [the pleas?]” Holliman responded affirmatively. The judge next made several findings:
First and foremost, the Court finds that the State of Mississippi has set forth a sufficient factual basis upon which to base these pleas, and these pleas will be accepted. The Court finds the pleas are freely and voluntarily given. The defendant appears to be alert and responsive. I do not detect any mental problems or emotional illness. He appears to be well advised of his rights by his attorney ..., he understands the consequences of offering his plea, and further, he has petitioned the Court in his own handwriting asking that I accept his plea of guilty. The plea, therefore, will be accepted.
At this point, the judge accepted Holli-man’s three guilty pleas and sentenced him in line with the State’s recommendation.
¶ 40. The United States Supreme Court has held that “to be deemed mentally competent to stand trial, a defendant must have ‘the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.’ ” Coleman, 2013 WL 3067576, at *3 (¶ 7) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).
¶ 41. After reviewing the judge’s handling of Holliman’s plea hearing, which thoroughly tested and evaluated his competency to stand trial and plead guilty, we find the judge substantially complied with Rule 9.06’s requirements. There is simply no credible record evidence that Holliman was mentally incapable of pleading guilty or that he was unable to consult with his attorney or misunderstood the proceedings.
¶ 42. Even at his PCR hearing, Holli-man leaned primarily on his dissatisfaction with the ten-year negotiated sentence, barely mentioning the competency issue. And his attorney once more emphasized their initial communication difficulties subsided as Holliman remained detained and the effects of drugs wore off. As the lawyer described his later meeting with Holliman before he entered his guilty plea:
I interviewed him extensively. He was lucid, he was clear, he was participatory with respect to his defense, he understood what his charges were, he understood what his exposure was. He was *947 able to assist me in talking about his case in trying to develop some strategy for a defense. Since these were undercover buys, he advised me that he had participated in those sales and that he was involved and that he knew what habitual offender status was and that he wanted me to move forward with his case and get him the least amount of time. That’s what I did.
¶ 43. Considering the record before us, we find the circuit judge not only sufficiently complied with Rule 9.06 but also properly addressed the Dusky standard when assuring Holliman was competent to enter his guilty pleas. So we find no injustice in enforcing our procedural rules and denying the untimely appeal.
¶ 44. Therefore, we dismiss.
¶ 45. THIS APPEAL IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. LEE, C.J., AND IRVING, P.J., CONCUR IN RESULT ONLY.

. An indictment in cause number CR 2005-0775CD charged Holliman with three felony counts — (1) selling alprazolam, (2) selling cocaine, and (3) possessing marijuana — all as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). A sepa *940 rate indictment in cause number CR 2005-0785CD also charged Holliman with three felony counts — (1) possession of hydrocodone in jail, (2) possession of marijuana in jail, and (3) possession of alprazolam in jail.

. The State claimed it had performed a proportionality analysis and recommended the lenient sentences.