# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00223-COA

**ETHEL ANTONIO PAGE A/K/A ANTONIO PAGE**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2019 |
| TRIAL JUDGE: | HON. ROBERT THOMAS BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### BARNES, C.J., FOR THE COURT:

¶1. Ethel Antonio Page appeals the judgment of the Circuit Court of Lauderdale County, which denied his motion for leave to file an out-of-time appeal. Finding no error, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. In September 2012, a Lauderdale County grand jury indicted Page for two felonies: Count I for kidnapping in violation of Mississippi Code Annotated section 97-3-53 (Supp. 2011), and Count II for "attempted forcible rape" in violation of Mississippi Code Annotated sections 97-1-7 (Rev. 2006) and 97-3-65 (Supp. 2007). The crimes occurred in March 2012 while Page was a mental patient at East Mississippi State Hospital in Meridian,

Mississippi.[1]

¶3.     On August 27, 2014, Page entered a guilty plea.  Under the plea agreement, Page

pleaded guilty to the attempted-forcible-rape charge, and the State "withdrew the kidnapping

charge."   The circuit court sentenced Page to serve twenty years in the custody of the

Mississippi Department of Corrections, with fifteen years suspended and five years of post-

release supervision.

¶4.     On October 23, 2014, Page filed a pro se "Motion to Vacate Sentence and to Dismiss

Charge."  The circuit court construed the motion as one for post-conviction relief (PCR).

Page claimed his guilty plea was involuntary, his counsel was ineffective for "coerc[ing him]

into taking the plea deal," and his right to a speedy trial was violated.  Page noted his history

of mental illnesses as the reason he was mentally incompetent to enter a plea, and he asserted

that his counsel should have requested a mental evaluation for him prior to his plea.

¶5.     On November 20, 2014, after a review of the records and transcripts,[2] the circuit court

found Page's claims were without merit and dismissed his motion.  Page did not appeal this

decision but instead sought relief from incarceration in a federal court.

---

[1] Page, who has a history of mental illness, had just been released from a three-year prison term for a drug charge.  While in prison, he had admittedly not taken his medication. When Page was released, his mother had him committed by a court order.

[2] The circuit court's November 20 order quoted substantial parts of the plea-hearing transcript, which is not a part of the appellate record, to show Page was competent.  When examined by the circuit judge, Page stated he was currently on medication for mental illness; the medicine was helping him control it; his mental illness was not interfering with his judgment; and he had discussed his plea agreement with counsel.  Accordingly, the circuit court found that Page was competent on that day and that he knowingly, intelligently, and voluntarily entered his plea agreement.  Additionally, at the plea hearing, Page had no complaints about his counsel.

¶6.     In May 2015, Page filed an action in federal court under 42 U.S.C. § 1983 against his former court-appointed attorneys and several mental-health hospitals.  He sought a reversal of his conviction and sentence due to alleged ineffective assistance of counsel and failure to seek proof of his mental incompetence.  The magistrate judge advised Page that release from incarceration was not available under a § 1983 action; instead, the judge advised he should seek relief through a habeas corpus application.  Therefore, in August 2015, Page filed an application for a writ of habeas corpus under 28 U.S.C. § 2254, claiming his plea was involuntary because he was incompetent at the time the plea was given; his counsel was ineffective for coercing him to take the plea deal even though he was incompetent; and the prosecutor and circuit judge knew he needed a mental evaluation prior to his plea, but he was never provided one.

¶7.     In mid-May 2017, Page notified the federal court that on May 1, 2017, he had been released from prison.  However, Page informed the court that he wanted to maintain his action based upon the restrictions and fees imposed due to his supervised release and the requirement that he register as a sex offender.  In July 2018, the magistrate judge issued a report and recommendation that Page's application should be stayed and held in abeyance so Page could exhaust his remedies in state court.  Additionally, the magistrate judge recommended to Page that he could file a motion in the State circuit court pursuant to Rule 4 of the Mississippi Rules of Appellate Procedure within forty-five days of the federal district court's anticipated order adopting the report and recommendation.

¶8.     Accordingly, Page, represented by counsel, filed his motion for leave to file an out-

of-time appeal in the circuit court under Rule 4(f) of the Mississippi Rules of Appellate Procedure, as recommended by the federal court. Rule 4(f) provides an out-of-time appeal for parties under the "disability of . . . unsoundness of mind." M.R.A.P. 4(f). Page argued that he was unable to file an appeal regarding the November 2014 order denying his PCR claims because he was under a mental disability and unable to conduct his own legal affairs. He pointed to an extensive history of mental-health treatment, and he said that he was on medication at that time. He also stated that a conservatorship was opened in the Smith County Chancery Court in December 2018 because he remained unable to conduct his own affairs. He attached to his motion a copy of the Social Security Administration's decision, dated July 2008, granting him disability benefits for schizophrenia. The decision deemed Page was disabled since June 2006.

¶9.     In January 2019, a hearing was held in the circuit court, where Page was present and represented by counsel. The circuit court denied his motion, finding that although Page had an extensive history of mental illness and had been in treatment for his condition since 2006, no proof was offered of his mental state at the time of the order entered in November 2014. Further, while Page was incarcerated, there was also no evidence of whether he was taking medication. Page timely appealed the denial of his motion.

## DISCUSSION

¶10.    Pages raises one issue on appeal: whether the circuit court erred in denying his motion for leave to file an out-of-time appeal. Page claims that he was under a mental disability at the time his PCR motion was denied in November 2014, which allegedly was

4

why he did not file an appeal. In denying the motion, the circuit court noted Page did not provide any evidence of his mental state during the November 2014 time-frame.

¶11. This Court reviews "a circuit court's denial of an out-of-time appeal for abuse of discretion." *Holliman v. State*, 129 So. 3d 937, 941 (¶13) (Miss. Ct. App. 2013). The Mississippi Rules of Appellate Procedure provide that a notice of appeal "shall be filed with the clerk of the [trial] court within 30 days after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a). This deadline applies to appellants seeking post-conviction relief as well. *Barnes v. State*, 46 So. 3d 855, 857 (¶9) (Miss. Ct. App. 2010). However, under Rule 4(f), if a party is under a disability of "unsoundness of mind," the time period for filing a notice of appeal shall not begin to run until the date on which the disability is removed.

¶12. Page entered his guilty plea on August 27, 2014. He filed his motion to vacate the sentence and dismiss the charges, which was treated as a PCR motion, on October 23, 2014. The circuit court denied the motion on November 20, 2014. Page had thirty days to file a notice of appeal from the order. Instead, on May 29, 2015, he filed a § 1983 action in the federal court.

¶13. Page argues he was incompetent when he entered a guilty plea in August 2014; therefore, the circuit court should have drawn "reasonable inferences" that he was subsequently of unsound mind to appeal the circuit court's ruling denying his PCR motion in November 2014 because of his long history of mental illness. In support of his argument, Page cites to criminal rules of procedure and case law dealing with competency to enter a

5

guilty plea and the standard for courts to order mental evaluations, such as Uniform Rule of Circuit and County Court Practice 8.04(A)(4)(a) and *Brasso v. State*, 195 So. 3d 856, 860 (¶12) (Miss. Ct. App. 2016). However, the more appropriate analysis for this appellate Rule 4(f) issue is whether Page was of unsound mind during the time he should have appealed from the order, not whether he was mentally competent to participate in criminal proceedings.

¶14. Page also acknowledges this standard, commenting on the "equitable tolling" nature of Rule 4(f). Additionally, he accurately reports that there are few, if any, appellate cases decided under Rule 4(f) and whether an individual has a disability that would allow him or her to file an out-of-time appeal. However, the "disability of infancy or unsoundness of mind" phrase in Rule 4(f) is also found in the "savings statute" of Mississippi Code Annotated section 15-1-59 (Rev. 2019). "This statute saves claims filed outside the limitations period if the person" is under the requisite disability.[3] *Reeg v. Keel*, 174 So. 3d 309, 312 (¶9) (Miss. Ct. App. 2015). "The term 'unsound mind,' when used in any statute in reference to persons, shall include idiots, lunatics, and persons non compos mentis." *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So. 2d 388, 390 (¶6) (Miss. 1998) (quoting

---

[3] Section 15-1-59 provides:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the *disability of infancy or unsoundness of mind*, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

(Emphasis added).

Miss. Code Ann. § 1-3-57 (1972)).

¶15.   Section 15-1-59's standard for "unsoundness of mind" is instructive because of its purpose: "to protect the legal rights of those who are unable to assert their own rights due to disability." *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 522 (¶18) (Miss. Ct. App. 2017) (quoting *Rockwell*, 710 So. 2d at 391 (¶11)).  Rule 4(f) protects parties under a legal disability who may need an extension to appeal. *See* M.R.A.P. 4(f) cmt. (citing *Parks v. Knight*, 491 So. 2d 217 (Miss. 1986)).  In *Shippers Express v. Chapman*, 364 So. 2d 1097, 1104 (Miss. 1978), the Mississippi Supreme Court articulated the test for determining whether a person is of unsound mind for purposes of tolling a statutory limitations period.  The court must ask: "Is his [or her] mind so unsound, or is he [or she] so weak in mind, or so imbecil[ic], no matter from what cause, that he [or she] cannot manage the ordinary affairs of life?" *U. S. Fid. &Guar. Co. v. Conservatorship of Melson*, 809 So. 2d 647, 653 (¶23) (Miss. 2002) (quoting *Shippers Exp.*, 364 So. 2d at 1104).

¶16.   The appellate record confirms the circuit court's finding that Page presented no evidence of his mental state or ability to "manage the ordinary affairs of life" at any time around November 2014.  Mental health documents entered into evidence during the motion hearing show Page was diagnosed with "Psychotic Disorder" and "Polysubstance Dependence in Remission" as early as 2003.  The documents include numerous progress notes for medical evaluation and monitoring from the Weems Community Mental Health Center dating from 2003, 2004, 2006, 2007, 2008, 2009, and 2010.  There is also an "initial evaluation" from the same mental health center dated April 2012, with the same diagnosis,

7

after Page had been released from commitment at East Mississippi State Hospital. However, the record contains no mental-health records after this time. Further, a diagnosed mental illness does not necessarily equate with an inability to manage the ordinary affairs of life. In *Brumfield v. Lowe*, 744 So. 2d 383, 387-88 (¶22) (Miss. Ct. App. 1999), this Court found the plaintiff's receipt of Social Security disability benefits for schizophrenia was insufficient to show he had an unsound mind that would toll the statutory limitations period under section 15-1-59 on a medical-malpractice action.

¶17. Page claims his mental disability is shown by not just his medical records, but the Social Security Administration's finding of a disability from mental illness. He also makes much of the fact he was placed under a conservatorship in December 2018 because he could not manage his affairs. As stated earlier, neither of these determinations show his mental state and ability to handle his affairs in November 2014. The closest offer of proof is Page's April 2012 initial evaluation at a community health center after being released from commitment at East Mississippi State Hospital, two years before the order's filing.

¶18. Page also argues that he was on medication and that this prevented him from filing an appeal. However, his prior progress reports from 2003 to 2010 show his mental illness was highly treatable and controlled by medicine, which could have helped his ability to manage his affairs and file an appeal, not hinder it. Indeed, once he admittedly quit taking his medicine while in prison for the drug charge, his illness returned, and in February 2012 his mother had him committed to a mental hospital, the site of the crimes at issue here. Additionally, there is no evidence in the appellate record whether he was on medication

during the time he was subsequently incarcerated for kidnapping and rape.

¶19. Finally, even if we were to utilize the standard for competency during criminal proceedings, the circuit court found Page competent to plead guilty in the end of August 2014, less than three months before the circuit court's order. The plea-hearing colloquy cited in the circuit court's order and the record corroborates this finding of competency.

¶20. We conclude the circuit court did not abuse its discretion in denying Page's motion for an out-of-time appeal, and we affirm the circuit court's judgment.

¶21. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY GREENLEE AND McDONALD, JJ. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; WESTBROOKS, J., JOINS IN PART.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶22. I generally agree with Judge McCarty's position in his dissent, but the majority is correct in its disposition of this specific case. In addition to the cases cited in the majority opinion, I would also cite to *Dennis v. State*, 283 So. 3d 1201 (Miss. Ct. App. 2019). Our Court, in *Denni*s, affirmed the trial court's denial of a PCR motion when the record contained evidence of past diagnosis and treatment for a mental disability yet contained no evidence of a disability during the specific time in question. In affirming the trial court's decision, this Court held that:

> here there was no evidence of any mental incapacity in the record, and Dennis provided none (except the letter stating he had been a special-education

9

student at some point in his schooling). Further, Dennis stated under oath that he understood his guilty plea and its implications, and there was no evidence to the contrary. Such statements made under oath "carry a strong presumption of veracity."

*Id*. at 1204 (¶14) (quoting *Thomas v. State*, 159 So. 3d 1212, 1216 (¶12) (Miss. Ct. App. 2015)).  This Court has held that appellants have the burden of providing authority and evidence for claims; as we said in *Dennis*, "[i]t is well established that the appellant must demonstrate reversible error by setting forth reasons for his arguments and citing authority in their support."  *Id*. at 1203 (¶13).

¶23.   In the case currently before this Court, as in *Dennis*, the circuit court was presented with no evidence of Page's extensive mental-health history.  The circuit court was not free to draw "reasonable inferences" as to Page's sound or unsound mind.  There is also no evidence that Page had a psychotic episode while before the court.  In fact, what the circuit court did have was evidence of capacity and sound mind at the time-period in question. Page was represented by counsel when he entered his guilty plea, and the circuit court questioned Page as to his competency.  Neither Page nor his attorney offered any evidence or testimony challenging Page's mental health.  Nor has Page provided any documentation or authority for his arguments on appeal.  My opinion might be different had Page presented anything in support of his claims, or if Page represented himself during the time in question. However, that is not the case before us.

**GREENLEE AND McDONALD, JJ., JOIN THIS OPINION IN PART.**

**McCARTY, J., DISSENTING:**

¶24.   Because the plain language of Rule 4(f) extended the time for Page to appeal, I

10

respectfully dissent.

¶25. The rule plainly states that "[i]n the case of parties under a disability of infancy or unsoundness of mind, the various periods of time for which provision is made in this rule and within which periods of time action must be taken *shall not begin to run* until the date on which the disability of any such party *shall have been removed*." M.R.A.P. 4(f) (emphasis added). The Comment to Rule 4(f) explains that "[r]ule 4(f) continues to recognize *an extension* for parties under a legal disability." M.R.A.P. 4(f) cmt. (emphasis added).

¶26. In other words, the focus is on the time when a party's unsoundness of mind was lifted, not the time in which the person should have appealed. The complexity of mental illness means that the extensions under Rule 4(f) may be practically unlimited.

¶27. An extension for people under a disability allows us to keep the door to the courthouse open. This rule then honors our constitutional command that "[a]ll courts shall be open . . . ." Miss. Const. art. 3, § 24. The rules just say how and when you open the door.[4] Rule 4(f) just keeps it open longer for those who need it.

¶28. The very real reality is that some Mississippians will never leave their disability

---

[4] Our rules are formulated to maximize access to courts. *See* M.R.C.P. 1 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every action."); M.R.C.P. 1.2 ("These Rules are to be interpreted to provide for the just and speedy determination of criminal proceedings, to secure simplicity in procedure and fairness in administration, to eliminate unjustifiable delay and expense, and to protect the rights of individuals while protecting the public."); M.R.A.P. 2(c) ("In the interest of expediting decision, or for other good cause shown, the Supreme Court or the Court of Appeals may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.").

11

behind. We know much more about mental illness than we did when the Mississippi Rules of Appellate Procedure were adopted in 1995. Even then, the Supreme Court was careful to craft this *unlimited* extension of time. Using the new version of the Rule, as written by the majority, parties are almost doomed to fail from the onset. The majority places a burden on a person struggling with mental illness that can rarely be carried.

¶29. Here, it is beyond cavil that Page was of unsound mind. He had been diagnosed with schizophrenia, a lifelong illness, and institutionalized for this affliction. He was even found to be of unsound mind and appointed a conservatorship as recently as 2018.[5]

¶30. Instead of closing the door on Page, we should follow our Constitution and the plain language of Rule 4, and keep it open.

**McDONALD, J., JOINS THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**

---

[5] The majority places great emphasis on Page's lack of records to his mental unsoundness at the time he should have filed his appeal—November 2014. Even if this period were the deciding factor as to whether the period to appeal was tolled—which it is not under the guidance of the rule—it is imperative to recognize that Page was incarcerated during this period.