**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3446
_____

UNITED STATES OF AMERICA


,


v.


BRIAN PRUITT,
                    Appellant


_____


Appeal from United States District Court
for the Eastern District of Pennsylvania
(Cr. No. 09-00306)
District Court Judge: Honorable Stewart Dalzell


_____


Submitted Under Third Circuit L.A.R. 34.1(a)
May 23, 2011
_____

Before: MCKEE, Chief Judge, SCIRICA, and GARTH, Circuit Judges

(Opinion Filed: June 1, 2011)

_____

OPINION
_____

GARTH, Circuit Judge:

Appellant Brian Pruitt appeals the District Court's decision to deny his motion for a competency hearing.[1] Pruitt argues that once the District Court learned that Pruitt had an IQ test score of 50, it should have held a competency hearing to determine whether Pruitt was competent at the time he pled guilty. We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

On May 5, 2009, Pruitt was charged in a 16-count indictment, consisting of eight counts of robbery and eight counts of using and carrying a firearm in connection with a crime of violence. The government charged that on eight occasions, Pruitt entered a store, pointed a gun at the owner or an employee, demanded cash and/or merchandise, and then fled with the items. After Pruitt was arrested, he waived his Miranda rights and admitted that he had committed the eight robberies charged in the indictment.

Each robbery count carried a maximum penalty of 20 years; the first firearms count carried a mandatory minimum sentence of seven years; and the remaining firearms counts carried mandatory minimums of 25 years. Pruitt initially entered a plea of not guilty on May 26, 2009, but later pled guilty on December 7, 2009. He entered a plea agreement with the government pursuant to Federal Rule of Criminal Procedure

[1] Pruitt appeals the Judgment and Sentence entered by the District Court. Pruitt does not specify whether he is appealing the District Court's Order dated July 28, 2010, denying his motion to withdraw guilty plea and request for hearing, or the court's order of August 5, 2010, denying his motion for reconsideration. We construe his appeal as as an appeal of all District Court orders.

11(c)(1)(C), in which he pled guilty to all eight robberies and two of the firearm counts. The agreement contemplated an aggregate prison term of 32 years and one day.

At the plea hearing, Pruitt stated that he had attended high school through the tenth grade, had held a number of jobs in recent years, was not under the influence of drugs or narcotics, and had never been treated for a mental health issue. Pruitt stipulated that he had discussed the plea agreement with his attorney, which Pruitt's attorney confirmed. Defense counsel and the prosecutor both stated that they were satisfied that Pruitt was competent to enter a guilty plea, and that the plea was willing and voluntary.

Approximately one month later, Pruitt's court-appointed counsel moved to withdraw from the case, asserting that Pruitt was dissatisfied with counsel's representation and wanted to withdraw his guilty plea. On January 12, 2010, the District Court granted counsel's motion and appointed new counsel. New counsel thereafter asked the court to order an IQ test, based on information she had received indicating that Pruitt suffered from an intellectual disability. The court granted the motion on February 22. Dr. Jeffrey Summerton, Ph.D., administered the IQ test, which revealed an overall IQ score of 50. Dr. Summerton explained that Pruitt's score placed him in the 0.07% of the population, which "is classified at being at the level of Moderate Mental Retardation."

After receiving the IQ test results, on July 6, 2010, Pruitt moved to withdraw his guilty plea, and asked for a hearing on the issue. Pruitt argued that the plea colloquy was insufficient because the court did not know of his intellectual limitations at the time. He argued that his plea was not knowing and voluntary and thus the court should vacate his plea, or alternatively, hold a hearing as to the involuntariness of the plea.

3

The District Court denied the motion on July 28, 2010. The court found that the IQ report was not sufficient grounds for withdrawing the guilty plea or ordering a competency hearing. Pruitt moved for reconsideration, which the District Court again denied. The District Court sentenced Pruitt to the negotiated prison term of 32 months and one day. Pruitt filed a timely notice of appeal.

II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A criminal defendant is entitled to a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *United States v. Jones*, 336 F.3d 245, 256 (3d Cir. 2003) (quoting 18 U.S.C. § 4241(a)). "If the District Court applied the proper legal standard, we review factual findings regarding competency for clear error." *Id.* (citing *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998)). A District Court may consider several factors, including a defendant's demeanor at the time of the proceedings, any medical opinion, and attorneys' representations as to competence. *See Jones*, 336 F.3d at 256. Ultimately, "the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

After reviewing the record, we conclude that the District Court did not commit clear error in determining that Pruitt's intellectual disabilities did not create reasonable

4

cause to question his competency to enter a guilty plea. The only evidence Pruitt proffered was the IQ report. The District Court considered the IQ results, along with several other factors, including: (1) the extended plea colloquy it engaged in with Pruitt; (2) the fact that Pruitt's counsel at the time of the plea hearing, and counsel for the Government, both stated that they had no concern regarding Pruitt's competency; (3) the fact that Pruitt only stated in his motion to withdraw that he had not understood "the mandatory nature of the sentence," and nothing else about pleading guilty (App. 13.); (4) that Pruitt's challenges based on competency in reading, spelling and arithmetic did not support his claim that he did not understand the ramifications of pleading guilty, particularly because those ramifications were conveyed to him orally during the plea colloquy; (5) Pruitt's multiple statements that he heard these ramifications and understood them; (6) Dr. Summerton's report indicating that the IQ test results are one indicator of Moderate Mental Retardation[2]; (7) that most people with Pruitt's IQ results were able to perform unskilled or semiskilled work; (8) that nothing in Dr. Summerton's report supported a claim that Pruitt could not understand the concept of pleading guilty and being incarcerated; and (9) Pruitt's attentiveness on the day of his guilty plea, his ability to answer questions directly and not in a rote manner, and the fact that he provided no signs that he was confused or misunderstood the nature of the proceedings.

The District Court thus considered all of the factors that this Court in *Jones* deemed important for determining competency, including "evidence of a defendant's

---

[2] The report indicates, for example, that "Mr. Pruitt's [results suggest] that he is able to make the most of his inherent intellectual capacities and does not suffer from a learning disability or unfulfilled potential." App. 120.

irrational behavior," "his demeanor" at the proceedings, "any . . . medical opinion on competence to stand trial," and "an attorney's representation about his client's competency." *Jones*, 336 F.3d at 256. All of these factors supported the District Court's conclusion. Therefore, the District Court did not err in denying Pruitt's request for a competency hearing.

## IV.

For the foregoing reasons, we will affirm the decision and sentence of the District Court.