# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01061-COA

**JEFFREY BRASSO A/K/A JEFFREY SCOTT BRASSO**　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2014 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAYMOND OSBORN BOUTWELL JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POSTCONVICTION RELIEF DISMISSED |
| DISPOSITION: | REVERSED AND REMANDED - 04/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND JAMES, JJ.

### JAMES, J., FOR THE COURT:

¶1.　　Jeffrey Brasso appeals from the circuit court's order summarily dismissing his motion for postconviction relief (PCR). Finding error, we reverse and remand with instructions consistent with this opinion. Although Brasso raises five issues on appeal, we address only the first issue regarding Brasso's competency because we find that issue is dispositive.

¶2.　　The record contains sufficient proof that the circuit court had reasonable grounds to believe that Brasso was potentially incompetent to stand trial. Because the circuit court failed to order a mental examination followed by a competency hearing under Uniform Rule

of Circuit and County Court Practice 9.06 prior to Brasso's guilty plea, we reverse the decision of the circuit court, and vacate Brasso's conviction. Brasso should be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06. *See Smith v. State*, 149 So. 3d 1027, 1035 (¶19) (Miss. 2014).

## FACTS AND PROCEDURAL HISTORY

¶3.     On October 13, 2009, Brasso was indicted for sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Supp. 2015). Specifically, Brasso was indicted for having sexual relations with a minor under the age of fourteen years old at the time, while he was more than two years older than the minor, between January 2004 and September 2008.

¶4.     Brasso's mother adopted a minor foster child, M.P.[1] Brasso, his mother, and his adopted sister, M.P., lived together. Brasso, at thirty two years old, began sexually abusing M.P. when she was nine years old. Brasso began having sexual intercourse with M.P. when she was eleven years old. Brasso fathered a child with M.P. when she was thirteen years old. Sometime after M.P. gave birth to the child, Brasso and M.P. went to Louisiana to get married. M.P.'s biological mother signed a waiver for Brasso and M.P. to get married. Brasso and M.P. got married and lived together. Sometime later, M.P. moved out of the house, and the marriage ended. It is uncertain whether the marriage was annulled, or whether it was void in the first instance due to M.P.'s age. Regardless, M.P.'s biological mother lacked authority to sign an effective waiver after she was adopted.

---

[1] We have substituted initials for the name of the minor victim.

¶5.     Brasso filed a petition to enter a guilty plea for sexual battery of a child in violation of section 97-3-95(1)(d).  On April 18, 2011, a plea hearing was held.  The circuit court accepted Brasso's guilty plea as voluntary and intelligently entered.  However, the circuit court deferred sentencing in order to obtain a presentence investigation report and to allow Brasso to undergo a mental evaluation.  On May 9, 2011, Brasso underwent a psychological forensic evaluation by Stefan Massong, Ph.D.  Dr. Massong prepared a report on May 23, 2011.  Dr. Massong stated in his report that Brasso was referred by his public defender, Adrienne Crawford, to "be evaluated to determine [Brasso's] general psychologic disposition, to identify any mental disorder(s) and to make recommendations for treatment, if applicable."

¶6.     The evaluation report was submitted to the circuit court, and on June 17, 2011, the sentencing hearing was held.  The circuit court heard from the prosecutor, Angel Myers, Brasso's attorney, Brasso, and witnesses who testified on Brasso's behalf.  The circuit court sentenced Brasso to twenty-five years in the custody of the Mississippi Department of Corrections, with twelve years to serve day-for-day, and five years of postrelease supervision.

¶7.     On April 17, 2014, Brasso filed a PCR motion.  On June 30, 2014, the circuit court summarily dismissed Brasso's PCR motion under Mississippi Code Annotated section 99-39-11(2) (Rev. 2015).  It is from this order that Brasso appeals to this Court.

**STANDARD OF REVIEW**

¶8.     "The [circuit] court may summarily dismiss a motion for PCR if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that

3

the movant is not entitled to any relief." *Smith,* 149 So. 3d at 1031 (¶7) (citing Miss. Code Ann. § 99-39-11(2)). This Court determines whether the motion presents a claim procedurally alive substantially showing denial of a state or federal right on appeal from the summary dismissal of a PCR motion. *Id.*

¶9. The constitutional right not to be tried or convicted while incompetent is a component of a defendant's due-process right to a fair trial. *Smith,* 149 So. 3d at 1031 (¶8) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1975)). "Uniform Rule of Circuit and County Court 9.06 requires a [circuit] court to order a defendant to undergo a mental examination if, upon its own motion or upon motion of an attorney, the [circuit] court has reasonable ground to believe that the defendant is incompetent to stand trial." *Bradley v. State*, 116 So. 3d 1093, 1095 (¶13) (Miss. Ct. App. 2013).

¶10. The determination of whether a circuit court has a reasonable ground to suspect incompetency is within the discretion of the trial judge. *Harden v. State*, 59 So. 3d 594, 601 (¶14) (Miss. 2011). "The standard of review for an appellate court to determine if there was an abuse of discretion is whether the trial judge received information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted the judge to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense." *Bradley*, 116 So. 3d at 1095-96 (¶13) (citing *Goff v. State*, 14 So. 3d 625, 644 (¶66) (Miss. 2009)).

**DISCUSSION**

4

## I. Whether Brasso was competent to enter a guilty plea.

¶11. Brasso argues that he was not competent to enter a guilty plea. Brasso also argues that the circuit court erred by not ordering a mental examination and conducting a competency hearing prior to accepting his guilty plea.

¶12. Under Uniform Rule of Circuit and County Court 8.04(A)(4)(a), "it is the duty of the [circuit] court to address the defendant personally and to inquire and determine . . . [t]hat the accused is competent to understand the nature of the charge[.]" "When the evidence raises sufficient doubt as to the defendant's competency to stand trial, the defendant is deprived of due process of law if the trial court fails to conduct a separate competency hearing." *Smith*, 149 So. 3d at 1033 (¶15) (citing *Pate,* 383 U.S. at 385). Rule 9.06 of the Uniform Rules of Circuit and County Court Practice provides the procedure for a circuit court's determination of whether a criminal defendant is mentally competent to stand trial. "Rule 9.06 is meant to ensure that a defendant's due process rights are not violated." *Coleman v. State*, 127 So. 3d 161, 166 (¶13) (Miss. 2013). Rule 9.06 instructs the circuit court, in part:

> If before or during trial the court, of its own motion or upon motion of an attorney, *has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination* by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.

> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. *If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.* If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.

(Emphasis added).

¶13.    Thus, under Rule 9.06, "once the [circuit] court has reasonable ground to believe the defendant is incompetent, Rule 9.06 mandates that the [circuit] court shall order a mental evaluation followed by a competency hearing to determine whether the defendant is competent to stand trial." *Smith*, 149 So. 3d at 1033 (¶16) (citing *Sanders v. State*, 9 So. 3d 1132, 1137 (Miss. 2009)).  Indeed, "even where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing responsibility to prevent the trial of an accused unable to assist in his own defense." *Magee v. State*, 914 So. 2d 729, 734 (¶14) (Miss. Ct. App. 2005).

¶14.    We find that the record contains sufficient proof that gave the circuit court reasonable grounds to believe that Brasso was incompetent to stand trial.  Therefore, a mental evaluation followed by a competency hearing under Rule 9.06 was warranted before Brasso was able to enter his guilty plea based on the record before this Court.  The record contains numerous references about Brasso's diminished mental capacity.

¶15.    The following excerpts from the plea hearing demonstrate that sufficient evidence existed to raise doubts as to Brasso's competency to stand trial:

> The Court:        You obtained a high school diploma from Pascagoula[?]
>
> Brasso:           No, sir.
>
> The Court:        From Gulf Coast Academy[?]
>
> Brasso:           Yes, sir.
>
> The Court:        And it says here in parentheses "for special education."
>                   You were a special ed student?

6

| | |
|---|---|
| Brasso: | Yes, sir. |

. . . .

| | |
|---|---|
| The Court: | . . . Have you held any jobs? |
| Brasso: | Not much.  I get Social Security. |
| The Court: | SSI [(Supplemental Security Income)]? |
| Brasso: | No, Social Security. |
| The Court: | Social Security.  Okay.  Are you under the influence of any drugs or alcohol at this time? |
| Brasso: | No, sir. |
| The Court: | *Is there any history of mental illness or mental disease?* |
| Brasso: | *Yes, sir.* |
| The Court: | And that's special education services you received in school? |
| Brasso: | Yes, sir. |
| The Court: | *And I've conferred with the attorneys in chambers and I understand that there is some information about your mental status that your attorney wants to present the Court to consider in any sentence I impose.  Correct?* |
| Brasso: | *Yes, sir.* |

(Emphasis added).

¶16.   Brasso also informed the circuit court that he was on an antidepressant medication. Later during the plea hearing, the circuit court questioned Brasso about a possible prior felony conviction, and it was revealed that Brasso had suffered organic brain damage:

| | |
|---|---|
| Brasso: | It was like 20-something years ago.  It was - - Fielding |

|  |  |
|---|---|
|  | Wright I think was my lawyer. |
| The Court: | Okay. |
| Brasso: | I can't remember. It's so long ago and I have - - |
| The Court: | Let's see, 20 years, that would have been about '91, '92? |
| Brasso: | And *I have organic brain damage*, so . . . |
| The Court: | From what? |
| Brasso: | From birth. |
| Ms. Crawford: | He suffered some *frontal lobe damage at birth*, Judge. |
| The Court: | You say around 20 years ago, in the 1990[]s? |
| Brasso: | Eighties - - somewhere in the eighties, I want to say. |
| . . . . |  |
| The Court: | Mr. Brasso, have you discussed with your attorney what the State's sentencing recommendation will be? Is there a recommendation? I see it's blank here. |
| Ms. Crawford: | Judge, we've received a couple of different recommendations, and from what I understand, the State's going to reserve its right to change the recommendation. I was told 25 years this morning with the right to change the recommendation pending the outcome of a pre-sentence investigation, which basically - - not through probation and parole, *but I know we've agreed to have him evaluated*. |

(Emphasis added).

¶17.   During the plea hearing, the trial court was advised of Brasso's special education background, his history of mental illness and disease, his organic brain damage, and that he had been taking medications. The circuit court did not inquire into Brasso's answer stating

8

that he had a history of mental illness and mental disease.

¶18.　The plea transcript indicates that the circuit court had been previously advised that the prosecution and Brasso's attorney had agreed to have Brasso undergo a mental evaluation. The circuit court confirmed that a discussion had occurred in chambers prior to the plea hearing on the subject of Brasso's mental issues and the need for an evaluation. However, the record is unclear as to exactly what issues regarding Brasso's mental competency were discussed or raised prior to the plea hearing. Moreover, the circuit court did not explain why a mental evaluation was not warranted prior to the plea hearing, although it was agreed to take place prior to sentencing.

¶19.　Despite being advised of Brasso's history of mental illness and disease, the circuit court accepted Brasso's guilty plea as knowingly, intelligently, and voluntarily entered before Brasso underwent a mental examination followed by a competency hearing. After accepting Brasso's guilty plea, Brasso's attorney stated that she needed a month to get "the paperwork and everything together and have him evaluated and provide that to the State[.]" The prosecutor then requested an official presentence investigation "plus the mental evaluation." Brasso's attorney informed the circuit court that Brasso was on "multiple medications."

¶20.　On May 9, 2011, Brasso underwent a mental evaluation by Dr. Massong. Dr. Massong concluded that Brasso had a generally normal mental status; likely low-average intelligence; was fully oriented; had adequate cognitive efficiency; and had no psychosis. However, Dr. Massong's report revealed an "extensive and pervasive history of mental health and behavioral dysfunction that beg[an] [at Brasso's] childhood and continues today."

9

¶21. Dr. Massong determined that Brasso suffered from organic brain syndrome; never achieved the milestone of a fully functioning, independent, or self-sufficient adult; and had been hospitalized for psychiatric treatment many times, including at least three civil commitments. Dr. Massong also found that Brasso had received many psychiatric diagnoses over the years including, among others, intermittent explosive disorder, personality disorder not otherwise specified, borderline personality disorder, delusional disorder, bipolar disorder, and schizoaffective disorder. Dr. Massong noted that Brasso had been treated with many psychoactive medications over the years, and he had received extensive outpatient psychiatric and psychological services. Dr. Massong also confirmed that Brasso had been determined to be fully and permanently disabled, likely for both medical and psychiatric reasons, by a Social Security determination.

¶22. On June 17, 2011, the sentencing hearing was held where additional significant information was shown regarding Brasso's competency. The following exchanges relevant to doubts surrounding Brasso's competency occurred:

The Court: All right. Mr. Brasso, you were before the Court April 18, 2011, [and] entered a plea of guilty to sexual battery. The Court at that time deferred sentencing to obtain a pre-sentence investigation report that I believe has been completed. The Court has reviewed that. And *also a lot of information submitted on your behalf by your attorney as to your medical condition.*

. . . .

Ms. Crawford: . . . But the reason that I'm telling you all of this is to try to put it in context for you about Jeffrey [Brasso]'s *mental state.* That's where I was going next, is there are *medicals that I presented to you that show he is slow.*

10

> *He's got some intellectual functioning problems.* His schooling, *he's always been in special education classes. He's never lived by himself really. He's running slow and he has some issues. He cannot take care of himself.* . . . And I am in no way blaming the victim, but there are things that need to be known to the Court to put it in context to understand. *If you have a man with diminished capacity . . .* it causes problems when you put that into the same house and the same situation. Now, I think it's a horrible set of circumstances, it's a terrible situation. . . . And . . . *you have a man who is of diminished capacity*, and I think it's a very bad situation. I think he thought he was doing the right thing.

(Emphasis added).

¶23.   During the hearing, Crawford called Brasso's uncle, Royce G. Crowley Sr., to the stand to testify. Crowley testified, in pertinent part:

Mr. Crowley:       . . . . First of all, I would like to talk about [Brasso's] physical condition. Everything I'm going to say about [Brasso's] health is on record and documented. When [Brasso] was born, *he suffered frontal lobe damage*, he was left too long in the birth canal. This has been documented by MRI. *There is little activity in that area.* He did not get sufficient oxygen to his brain, and it left him with ADHD and also seizures until he was about six years old. *He has been diagnosed with schizophrenic and bipolar* [disorder], *which runs in his family with his bottom two brothers also having the same disorders*[.] . . . [Brasso] is *just a big 14-to-15-year-old mentally. Or to be stated truthfully, after having known him all his life, he is simple-minded, a man with mental deficiencies.* I've helped my sister with many household projects over the years and Jeffrey could never help me with any of them *because he could not be taught even a simple task.* He *just wasn't mentally capable.* So, Your Honor, please, please, keep all this in mind when you make your decision.

       . . . .

11

| Mr. Crowley: | Okay. That's, that's the situation I have, to show you *Jeffrey is simple-minded* and he - - |
|---|---|
| The Court: | *I understand, and we are here about his problems.* |

(Emphasis added).

¶24. Next, a family friend, Darlene Austin, took the stand:

| Ms. Austin: | . . . . But it just seems like the last thing that I could say is that *his mental condition has been deteriorating really badly*[.] And I've seen their mother try to get all the help for [Brasso] that she could. *She took him to the mental health . . . but it was just out of control.* |
|---|---|

(Emphasis added).

¶25. Crawford then addressed the circuit court regarding the testimony that had been presented:

| Ms. Crawford: | Judge, I think - - you know, that being said with family members and friends of family, obviously that Mr. *Brasso has some mental issues that he's been having to deal with*, obviously this is a very dysfunctional family situation that has brought us here today, Judge. . . . *I also had a mental evaluation done by Dr. Massong that I turned in to Your Honor, and what he found in this evaluation is that he does have a lot of mental deficiencies, that he is slow, very immature.* |
|---|---|

(Emphasis added).

¶26. Brasso also addressed the circuit court, again raising a question as to his mental capacity:

| Brasso: | I just wanted to say that I'm sorry, and - - *I don't know what's wrong with me. You know, my, my mind ain't right. And I'd like to get some help, get back on my medication.* |
|---|---|

(Emphasis added).

¶27.    The circuit court acknowledged Brasso's numerous issues:

The Court:    As I indicated, I've rarely seen a situation like this. It's just as monstrous as it is perplexing to me. A situation where an individual was taking children who need a home, to care for them, nurture them, and in that home they become victimized - - or this [minor] does. . . . This victim becomes victimized. *By an individual who has learning disabilities, by an individual who has antisocial, explosive disorder, conduct disorders, has a myriad of issues of his own.*

(Emphasis added).

¶28.    The circuit court went on to discuss Brasso's severely dysfunctional family and "monstrous" cover up, which appeared to have been facilitated by Brasso's mother. Just before issuing its sentence, the Court stated: "[Brasso] *might not quite fully understand everything*, but he knew better." (Emphasis added). This statement substantiates the finding that there was information that raised doubt about Brasso's competence and "alerted the circuit court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense." *See Bradley*, 116 So. 3d at 1095-96 (¶14).

¶29.    After sentencing Brasso, the circuit court "direct[ed] that Mr. Brasso be delivered to the medical unit at the penitentiary and there housed until, in the opinions of those in charge of that medical unit and psychiatric unit . . . he can handle [the] general population and that his medical needs are met."

¶30.    The record is replete with information that, when objectively considered, certainly

13

should have raised doubt as to Brasso's competency. Throughout this record, the circuit court was alerted to and even acknowledged proof of Brasso's possible incompetency. However, the circuit court did not order a mental examination followed by a competency hearing prior to the plea hearing. The dissenting opinion states that the trial judge did not abuse his discretion by ordering a mental evaluation after Brasso entered his guilty plea for sentencing purposes only. However, Rule 9.06 does not provide for retroactive mental evaluation to determine a defendant's competency to stand trial.

¶31. We find that the circuit court abused its discretion in not ordering a mental evaluation and conducting a mental competency hearing prior to accepting Brasso's plea based on the record before us. As a result, we reverse the decision of the circuit court, and vacate Brasso's conviction. Brasso should be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06. *See Smith*, 149 So. 3d at 1035 (¶19).

¶32. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**WILSON, J., DISSENTING:**

¶33. A defendant is competent to enter a guilty plea as long as he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Russell v. State*,

44 So. 3d 431, 435 (¶13) (Miss. Ct. App. 2010) (quoting *Magee v. State*, 914 So. 2d 729, 733 (¶11) (Miss. Ct. App. 2005)). The trial judge in this case was not presented with any information that called into question Brasso's understanding of the charges against him or his ability to consult with his lawyer. Accordingly, the trial judge did not abuse his discretion by not ordering a competency hearing sua sponte.

¶34. At his plea hearing, Brasso answered all of the judge's questions responsively and coherently. Brasso's attorney confirmed that she had not had any difficulty communicating with him. Brasso confirmed that he understood the charges against him, the minimum and maximum sentences, that he would be ineligible for parole, and that he would have to register as a sex offender. He also confirmed that he and his attorney had discussed the facts of the crimes with which he was charged and possible defenses. He also confirmed that he understood that by pleading guilty, he waived a number of constitutional rights. He then admitted that he had sex with the victim, his adopted sister, when she was under the age of fourteen. Finally, Brasso confirmed that he desired to plead guilty. The judge then accepted Brasso's plea, finding that it was entered freely, voluntarily, and knowingly. At no point during the hearing was Brasso's behavior unusual or erratic. Brasso's attorney did request a mental evaluation prior to sentencing. However, she expressed no concerns as to Brasso's competence. It is clear that she wanted an evaluation only to provide the judge with additional information for consideration at sentencing.

¶35. Prior to sentencing, Dr. Stefan Massong evaluated Brasso and prepared a report for the court. According to Dr. Massong, Brasso "was generally alert, cooperative, and seemed

15

motivated" during his interview. Dr. Massong found that Brasso had "a well-ingrained personality style of 'victim hood' or helplessness or 'poor me' characteristic of chronically emotionally immature and inadequate individuals." Dr. Massong concluded that Brasso consciously and subconsciously sought to manipulate others for his own benefit and to engender sympathy. Dr. Massong noted that Brasso's medical records included similar observations by other medical professionals.

¶36.    Dr. Massong's reported that Brasso had been diagnosed with "Organic Brain Syndrome related to hypoxia episode at birth (mild brain damage due to oxygen privation)." According to Dr. Massong, the typical characteristics of this condition—which Brasso exhibited—include learning disabilities, hyperactivity, unstable moods, marked immaturity, impulsiveness, temper tantrums, lack of autonomy, dysfunctional relationships, poor judgment, problem-solving difficulties, and occupational dysfunction.

¶37.    Dr. Massong also noted that Brasso had been hospitalized for psychiatric treatment several times, sometimes in connection with suicidal statements and "sometimes accompanied by self-descriptions of psychosis . . . , but without any clinical verification by the attending mental health professionals." Dr. Massong further explained: "Most of the mental health professionals that have evaluated [Brasso] and/or treated him, including myself, have *not* observed symptoms consistent with diagnoses of psychoses or Schizophrenia" (emphasis added); however, some professionals, Dr. Massong included, had concluded that Brasso was quick to claim "Schizophrenia as his diagnosis or . . . offer[] a formal list of Schizophrenia symptoms that sound[ed] contrived or rehearsed." Brasso had

16

not been hospitalized for psychiatric reasons in the five years prior to his arrest, and Dr. Massong observed that he "seemed to have a relatively more stable personal and social adjustment" during that period.

¶38. Dr. Massong concluded his report with "Findings" that begin with the following summary of Brasso's mental health:

> Mr. Brasso is a 43 year old man who presents with a generally normal mental status: likely low-average intelligence with educational achievement commensurate with upper grade school to junior high school education; fully oriented; adequate cognitive efficiency; no psychosis; suicide ideation/intent is not apparent; no recent history of alcohol or substance abuse. He is, however, quite distressed and emotionally fragile -- worried about his mother and son and, of course, his pending sentencing date.

¶39. The plurality opinion emphasizes Brasso's "organic brain syndrome" and his uncle's testimony that he is "simple-minded," but neither this information nor anything else before the circuit judge called into doubt Brasso's competence to stand trial—i.e., his basic understanding of the charges against him and capability to consult with his lawyer.[2] As discussed above, Brasso was coherent and responsive at his plea hearing and sentencing hearing. He did not exhibit any irrational behavior, make any outburst, or do anything else that would have suggested to the trial judge that he was incompetent to plead guilty. Nor was there any prior medical opinion deeming him incompetent. *See Bradley v. State*, 116 So. 3d 1093, 1096 (¶17) (Miss. Ct. App. 2013) ("[T]he United States Supreme Court has explained

---

[2] The plurality opinion also notes Brasso's "medications," disability determination, and assignment to the "medical unit and psychiatric unit" of the penitentiary. However, these issues appear to be equally or more related to Brasso's physical problems, which include morbid obesity (his weight fluctuated between 430 and 600 pounds), diabetes, hypertension, chronic back pain, sleep apnea, and other diagnoses.

17

[that] 'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required.'" (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975))).

¶40. Standing alone, Brasso's "organic brain syndrome" and supposed simplemindedness did not require the circuit judge to order a competency hearing. "The [U.S.] Supreme Court has never held that evidence of mild mental retardation is sufficient to require a trial judge to order a competency hearing." *Thompson v. Pliler*, 339 F. App'x 782, 784 (9th Cir. 2009); *accord, e.g.*, *United States v. Fauntleroy*, 508 F. App'x 238, 240-42 (4th Cir. 2013) (suggestion of mild mental retardation did not require a competency hearing); *United States v. Pruitt*, 429 F. App'x 155, 157-58 (3d Cir. 2011) (same). Indeed, the U.S. Supreme Court has stated that "[m]entally retarded persons frequently know the difference between right and wrong and are competent to stand trial." *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). In *Bradley*, this Court held that the trial judge did not abuse his discretion by denying a motion for a competency hearing notwithstanding that the defendant's attorney alleged that the defendant was incompetent to stand trial, a letter from another attorney reported that the defendant had an IQ of 58, and his mother testified to his childlike behavior. *See Bradley*, 116 So. 3d at 1094-97 (¶¶7-23). Similarly, in *Harden v. State*, 59 So. 3d 594 (Miss. 2011), our Supreme Court held that the trial judge did not abuse his discretion by denying a motion for a mental evaluation and competency hearing even though the defendant was mildly mentally retarded, his attorney reported that he was "uncommunicative," and the defendant had difficulty responding to the court's questions and claimed not to understand the contents

18

of his plea petition or the plea proceedings. *See id.* at 600-603 (¶¶11-19). In each case, the appellate court found that the trial judge, who was able to observe the defendant's demeanor firsthand, committed no abuse of discretion.

¶41. In this case, Brasso's attorney confirmed that she did not have any difficulties communicating with him, and she never expressed any concern to the court regarding Brasso's competence. This is not because the attorney was unaware of Brasso's mental health issues. The record clearly reflects that she knew about her client's limitations and history but viewed the information as a possible mitigating factor at sentencing, not a competency issue. The plurality opinion criticizes the circuit judge because he "did not explain why a mental evaluation was not warranted prior to the plea hearing, although it was agreed to take place prior to sentencing." I disagree that any explanation was necessary. There was simply nothing to suggest that Brasso was incompetent to plead guilty, and the evaluation was potentially relevant only to the judge's sentencing decision.

¶42. In addition, while Dr. Massong's report acknowledged Brasso's history of mental health issues, Dr. Massong also concluded that Brasso exaggerated those issues for his own purposes, that Brasso "present[ed] with a generally normal mental status" with "likely low-average intelligence," and that he was "fully oriented" with "adequate cognitive efficiency" and "no psychosis." A "generally normal mental status" and "low-average intelligence," etc. are hardly reasons for a trial judge to order a competency hearing. Nothing in Dr. Massong's report suggests that Brasso was unable to consult with his attorney or did not appreciate the nature and consequences of the charges against him.

19

¶43. "[T]he pertinent question is whether 'the trial judge received information which, objectively considered, should reasonably have raised a doubt about [the] defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.'" *Harden*, 59 So. 3d at 601 (¶14) (quoting *Goff v. State*, 14 So. 3d 625, 644 (¶66) (Miss. 2009)). The issue is committed to the "discretion of the trial judge," who is able to observe the defendant and his demeanor firsthand, and we review trial judge's ruling for an abuse of discretion only. *Id.* The trial judge in this case received no information that called into question Brasso's competence; therefore, he did not abuse his discretion by accepting his guilty plea, and there is no basis for setting aside Brasso's conviction. Accordingly, I dissent.

**GRIFFIS, P.J., ISHEE AND FAIR, JJ., JOIN THIS OPINION.**