WILSON, J.,
dissenting:
¶ 33. A defendant is competent to enter a guilty plea as long as he has “sufficient *865 present ability to consult with his lawyer with a reasonable degree of rational understanding” and a “rational as well as factual understanding of the proceedings against him.” Russell v. State, 44 So.3d 431, 435 (¶ 13) (Miss.Ct.App.2010) (quoting Magee v. State, 914 So.2d 729, 733 (¶ 11) (Miss.Ct.App.2005)). The trial judge in this case was not presented with any information that called into question Brasso’s understanding of the charges against him or his ability to consult with his lawyer. Accordingly, the trial judge did not abuse his discretion by not ordering a competency hearing sua sponte.
¶ 34. At his plea hearing, Brasso answered all of the judge’s questions responsively and coherently. Brasso’s attorney confirmed that she had not' had any difficulty communicating with him. Brasso confirmed that he understood the charges against him, the minimum and maximum sentences, that he would be ineligible for parole, and that he would have to register as a sex offender. He also confirmed that he and his attorney had discussed the facts of the crimes with which he was charged and possible defenses. He also confirmed that he understood that by pleading guilty, he waived a number of constitutional rights. He then admitted that he had sex with the victim, his adopted sister, when she was under the age of fourteen. Finally, Brasso confirmed that he desired to plead guilty. The judge then accepted Brasso’s plea, finding that it was entered freely, voluntarily, and knowingly. At no point during the hearing was Brasso’s behavior unusual or erratic. Brasso’s attorney did request a mental evaluation' prior to sentencing. However, she expressed no concerns as to Brasso’s competence. It is clear that she wanted an evaluation only to provide the judge with additional information for consideration at sentencing.
¶ 35. Prior to sentencing, Dr.. Stefan Massong evaluated Brasso and prepared a report for the court. According to Dr. Massong, Brasso “was generally alert, cooperative, and seemed motivated” during his interview. Dr. Massong found that Brasso had “a well-ingrained personality style of ‘victim hood’ or helplessness or ‘poor me’ characteristic of chronically emotionally immature and inadequate individuals.” Dr. Massong concluded that Brasso consciously and subconsciously sought to manipulate others for his own benefit and to engender sympathy. Dr. Massong noted that Brasso’s medical records included similar observations by other medical professionals.
¶ 36. Dr. Massong’s reported that Bras-so had been diagnosed with “Organic Brain Syndrome related to hypoxia episode at birth (mild brain damage due to oxygen privation).” According to Dr. Mas-song, the typical characteristics of this condition — -which Brasso exhibited — include learning disabilities, hyperactivity, unstable moods, marked immaturity, impulsiveness, temper tantrums, lack of autonomy, dysfunctional relationships, poor judgment, problem-solving difficulties, and occupational dysfunction.
¶ 37. Dr. Massong also noted that Brasso had been hospitalized for psychiatric treatment several times, sometimes in connection with suicidal statements and “sometimes accompanied by self-descriptions of psychosis ..., but without any clinical verification by. the attending mental health professionals.” Dr. Massong further explained: “Most of the mental health professionals that have evaluated [Brasso] and/or treated him, including myself, have not observed symptoms consistent with diagnoses of psychoses or Schizophrenia” (emphasis added); however, some professionals, Dr. Massong included, had concluded that Brasso was *866 quick to claim “Schizophrenia as his diagnosis or .., offer[ ] a formal list of Schizophrenia symptoms that sound[ed] contrived or rehearsed.” Brasso had not been hospitalized for psychiatric reasons in the five years prior to his arrest, and Dr. Massong observed that he “seemed to have a relatively more stable personal and social adjustment” during that period.
¶ 38. Dr. Massong concluded his report with “Findings” that begin with the following summary of Brasso’s mental health:
Mr. Brasso is a 43 year old man who presents with a generally normal mental status: likely low-average intelligence with educational achievement commensurate with upper grade school to junior high school education; fully oriented; adeqúate cognitive efficiency; no psychosis; suicide ideation/intent is not apparent; no recent history of alcohol or substance abuse. He is, however, quite distressed and emotionally fragile — worried about his mother and son and, of course, his pending sentencing date.
¶ 39. The plurality opinion emphasizes Brasso’s “organic brain syndrome” and his uncle’s testimony that he is “simple-minded,” but neither this information nor anything else before the circuit judge called into doubt Brasso’s competence to stand trial — i.e., his basic understanding of the charges against him and capability to consult with his lawyer.[2] -As discussed above, Brasso was coherent and responsive at his plea hearing and sentencing hearing. He did not exhibit any irrational behavior, make any outburst, or do anything else that would have suggested to the trial judge that he was incompetent to plead guilty. Nor was there any prior medical opinion deeming him incompetent. See Bradley v. State, 116 So.3d 1093, 1096 (¶ 17) (Miss.Ct.App.2013) (“[T]he United States Supreme Court has explained [that] ‘evidence of a defendant’s irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required.’ ” (quoting Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975))).
¶ 40. Standing alone, Brasso’s “organic brain syndrome” and supposed simple-mindedness did not require the circuit judge to order a competency hearing. “The [U.S.] Supreme Court has never held that evidence of mild mental retardation is sufficient to require a trial judge to order a competency hearing.” Thompson v. Pliler, 339 F. App’x 782, 784 (9th Cir.2009); accord, e.g., United States v. Fauntleroy, 508 F. App’x 238, 240-42 (4th Cir.2013) (suggestion of mild mental retardation did not require a competency hearing); United States v. Pruitt, 429 F. App’x 155, 157-58 (3d Cir.2011) (same). Indeed, the U.S. Supreme Court has stated that “[m]entally retarded persons frequently know the difference between right and wrong and are competent to stand trial.” Atkins v. Virginia, 536 U.S. 304, 318, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). In Bradley, this Court held- that the trial judge did not abuse his discretion by denying a motion for a competency hearing notwithstanding that the defendant’s attorney alleged that the defendant was incompetent to stand trial, a letter from another attorney reported that the defendaht had an IQ "of 58, and his mother testified to his childlike behavior. See Bradley, 116 So.3d at 1094-97 .(¶¶ 7-23). Similarly, in Harden v. State, 59 So.3d 594 (Miss.2011), our Su *867 preme Court held that the trial judge did not abuse his discretion by denying a motion for a mental evaluation and competency hearing even though the defendant was mildly mentally retarded, his attorney reported that he was “uncommunicative,” and the defendant had difficulty responding to the court’s questions and claimed not to understand -the contents of his plea petition or the plea proceedings. See id. at 600-603 (¶¶ 11-19). In each case, the appellate court found that the trial judge, who was able to observe the defendant’s demeanor firsthand, committed no abuse of discretion.
¶41. In this case, Brasso’s attorney confirmed that she did not- have any difficulties communicating with him, and she never expressed any concern to' the court regarding Brasso’s competence. This is not because the attorney was unaware of Brasso’s mental health issues. The record clearly reflects that she knew about her client’s limitations and history but viewed the information as a' possible mitigating factor at sentencing, not a competency issue. The plurality opinion criticizes the circuit judge because he “did not explain why a mental evaluation was not warranted prior to the plea hearing, although it was agreed to take place prior to sentencing.” I disagree that any explanation was necessary. There was simply nothing to suggest that Brasso was incompetent to plead guilty, and the evaluation was potentially relevant only' to the judge’s sentencing decision.
¶ 42. In addition, while Dr. Massong’s report acknowledged Brasso’s history of mental health issues, Dr. Massong also concluded that Brasso exaggerated those issues for his own purposes, that Brasso “present[ed] with a generally normal mental status” with “likely low-average intelligence,” and that he was “fully oriented” with “adequate cognitive efficiency” and “no psychosis.” A “generally normal mental status” and “low-average intelligence,” etc. are hardly reasons for a trial judge to order a competency hearing. Nothing in Dr. Massong’s report suggests that Brasso was unable to consult with his attorney or did not appreciate the nature and consequences of the charges against him.
¶ 48. “[T]he pertinent question is whether ‘the trial judge received information which, objectively considered, should reasonably have raised a doubt about [the] defendant’s competence and alerted him to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.’ ” Harden, 59 So.3d at 601 (¶ 14) (quoting Goff v. State, 14 So.3d 625, 644 (¶ 66) (Miss.2009)). The issue is committed to the “discretion of the trial judge,” who is able to observe the defendant and his demeanor firsthand, and we review trial judge’s ruling for an abuse of discretion only. Id. The trial judge in this- case received no information that called into question Brasso’s competence; therefore, he did not abuse his discretion by accepting his guilty plea, and there is no basis for setting aside Brasso’s conviction. Accordingly, I dissent.
GRIFFIS, P.J., ISHEE AND FAIR, JJ., JOIN THIS OPINION.

. The plurality opinion also notes Brasso's “medications," disability determination, and assignment to the “medical unit and psychiatric unit" of the penitfentiary. However, these issues appear to be equally or more related to Brasso’s physical problems, which include morbid obesity (his. weight fluctuated between 430 and 600 pounds), diabetes, hypertension, chronic back pain, sleep apnea, and other diagnoses.