# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01230-COA

JOHN PHINIZEE A/K/A JOHN L. PHINIZEE JR.        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

DATE OF JUDGMENT: 08/10/2016
TRIAL JUDGE: HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: BLEWETT W. THOMAS
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: BILLY L. GORE
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 06/19/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1. John Phinizee appeals the Lowndes County Circuit Court's dismissal of his motion for post-conviction relief (PCR). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The following facts are taken from *Phinizee v. State*, 983 So. 2d 322, 324-26 (¶¶3-10) (Miss. Ct. App. 2007):

> In April 1999, an officer of the Lowndes County Narcotics Unit (LCNU) made an undercover purchase of forty dollars worth of cocaine from Bernard's Pool Hall. No arrest was made at the time.
>
> In July 2001, officers of the LCNU received a letter from a concerned citizen stating that a man by the name of John was selling drugs from Bernard's. Again, in April 2002, Officer Larry Swearingen of the LCNU received a letter

from a concerned citizen stating that Phinizee was selling cocaine and marijuana from Bernard's. Shortly thereafter, Officer Swearingen talked with Phinizee at Bernard's but no arrest was made at the time.

In October of 2003, Georgia Whitmore's husband came to Officer Swearingen's office and stated that his wife was regularly purchasing crack cocaine from Phinizee at Bernard's Pool Hall and sometimes at one of the Citco stations in Columbus, Mississippi. He stated further that his wife had been buying from Phinizee for a long time and was addicted to cocaine.

On December 8, 2003, Whitmore's husband called Officer Swearingen and informed him that Whitmore planned to meet Phinizee to buy cocaine the next day between 7:00 a.m. and 9:00 a.m. at one of two Citco stations, located either on Highway 45 North or at the intersection of Military Road and Martin Luther King Drive. Whitmore's husband supplied the tag number of Phinizee's vehicle, which he described as a black extended-cab Chevrolet truck. Whitmore's husband also stated that his wife would be driving a maroon 2000 Prism. Officer Swearingen then ran the tag number and confirmed that the truck was registered to Phinizee and his wife.

The following day, Officer Swearingen conducted surveillance of the Citco station at the intersection of Military Road and Martin Luther King Drive. During the hours suggested, he observed Whitmore arrive at the gas station, park her car, and make a call from a pay phone located directly behind a barbeque pit near the gas station. After completing the phone call, Whitmore got back in her car and drove around to the front of the barbeque pit. A few minutes later, Phinizee arrived at the gas station in a black Chevrolet truck. Officer Swearingen then observed Phinizee and Whitmore exit their respective vehicles and make an exchange which he believed to be a drug transaction. Whitmore then left the gas station and was pulled over a short distance therefrom at approximately 8:45 a.m. Whitmore was searched and a Trophy chewing tobacco pouch containing cocaine was found in her brassiere. Upon her arrest, [Whitmore] gave a written signed statement that she had purchased cocaine from Phinizee for a couple of years, and that she had [. . .] just bought cocaine from him that morning. She also stated that she had purchased cocaine from Phinizee at least a hundred times at Bernard's over the past few years.

At approximately 10:30 a.m., Officer Swearingen and Officer Joey Brackin returned to the Citco station to arrest Phinizee. A few minutes after they arrived, Phinizee pulled into the parking lot and was arrested as he exited his vehicle. Officer Swearingen testified that he looked into Phinizee's truck and

was able to see numerous Trophy chewing tobacco pouches identical to the one taken from Whitmore's bra. He then searched the interior of the truck and found cocaine inside one of the tobacco pouches. Phinizee's vehicle was towed and he was taken to the sheriff's office for processing.

After these events transpired, Officer Swearingen submitted an affidavit for a search warrant of Bernard's Pool Hall. Officer Swearingen signed the "Underlying Facts and Circumstances" sheet which was attached to his affidavit submitted to Justice Court Judge Chauncey Green. Judge Green issued the requested search warrant and Phinizee accompanied Officer Swearingen to his place of business. The ensuing search of the pool hall yielded marijuana and cocaine. Once back at the station, Phinizee admitted that he had been selling drugs from Bernard's Pool Hall and gave a signed written statement to that effect after signing a waiver of rights.

¶3.     Following a trial in 2006, Phinizee was convicted of one count of the sale of cocaine and two counts of possession of cocaine with intent to distribute. Phinizee was sentenced to thirty years in the custody of the Mississippi Department Corrections for each count with the sentences in counts two and three to run concurrently, and the sentence in count one to run consecutively with the sentences in counts two and three—for a total of sixty years.

¶4.     Phinizee filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial; but Phinizee's conviction was affirmed on direct appeal. *See Phinizee*, 983 So. 2d at 331 (¶30). In 2011, the Mississippi Supreme Court granted Phinizee's application for leave to file his PCR motion in the trial court following a change of attorneys. In that PCR, Phinizee alleged ineffective assistance of counsel because of his trial counsel's failure to raise his lack of intelligence, related brain disorders, and other mitigating circumstances which he claims hindered him from assisting with his defense. The Supreme Court remanded the case to the Lowndes County Circuit Court for an evidentiary hearing to determine the validity of Phinizee's claims.

3

¶5. In 2013, the circuit court conducted part one of the bifurcated evidentiary hearing to determine whether Phinizee received effective assistance of counsel. During that hearing, Dr. Bodsky, forensic psychologist and Phinizee's expert witness, testified that he was of the opinion that Phinizee was not competent to stand trial or aid his attorney in his defense during the 2006 trial.

¶6. Part two of the hearing was held in May 2016, after the State conducted its own mental evaluation of Phinizee. Dr. Robert Storer, a forensic psychologist, stated that he could not testify with medical certainty that Phinizee was competent to stand trial "because competency was a functional assessment." However, Dr. Storer stated that he did not detect any defect in Phinizee's understanding of his legal situation in 2006.

¶7. In August 2016, the circuit court denied Phinizee's PCR motion. Phinizee now appeals.

## STANDARD OF REVIEW

¶8. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Alexander v. State*, 228 So. 3d 338, 340 (¶7) (Miss. Ct. App. 2017).

## DISCUSSION

¶9. Phinizee argues that the circuit court's finding was "clearly erroneous" because his trial counsel failed to refer to his mental intelligence and failed to conduct a reasonable pre-

4

trial investigation to discover his lack of mental intelligence. As a result, Phinizee argues that his counsel's performance was deficient. "In order to succeed on a claim of ineffective assistance of counsel, the defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Carson v. State*, 161 So. 3d 153, 155-56 (¶3) (Miss. Ct. App. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶10. "Rule 9.06 of the Uniform Rules of Circuit and County Court Practice[1] provides the procedure for a circuit court's determination of whether a criminal defendant is mentally competent to stand trial." *Brasso v. State*, 195 So. 3d 856, 860 (¶12) (Miss. Ct. App. 2016). "Rule 9.06 is meant to ensure that a defendant's due process rights are not violated." *Id*.

¶11. At the August 2013 hearing, Gary Goodwin, Phinizee's counsel at trial in 2006, testified that he met with Phinizee on several occasions to discuss the facts of his case. He stated that he felt that Phinizee adequately communicated with him, and that Phinizee understood the charges against him and the consequences he faced if convicted. Goodwin stated that Phinizee communicated that he was receiving social security benefits, and that Phinizee disclosed he suffered a brain aneurysm several years prior to his arrest, which resulted in brain surgery. However, Goodwin maintained that he saw no evidence that Phinizee lacked capacity to assist in his own defense.

---

[1] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. But, because the former rules were still in effect during Phinizee's trial, Rule 9.06 applies to Phinizee's case. The same applies to any other of the former rules cited in this opinion.

¶12. Phinizee asserts that his trial counsel's assistance was deficient because Goodwin did not put on any witness testimony or present evidence to support the assertion that he lacked the mental capacity to stand trial. Furthermore, Phinizee asserts that Goodwin did not investigate any of these claims or order a mental evaluation once he learned of Phinizee's brain surgery. Phinizee also challenges Goodwin's decision to not submit mitigating factors at his sentencing hearing.

¶13. Goodwin testified that he spoke with Phinizee's wife, Mariah, for the first time at Phinizee's trial. Goodwin stated that she demanded an insanity or incapacity defense the morning of trial. However, Goodwin testified that he did not think that Phinizee was insane or lacked the capacity to understand the nature of the charges against him. Furthermore, Goodwin testified that he did not think Mariah had her husband's best interest at heart, because she waited until the trial had already commenced before speaking with him about her husband's possible lack of capacity.

¶14. This Court has held that "trial counsel is afforded 'broad discretion' in such matters of trial strategy, and we will not second-guess counsel's decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). Moreover, "we look at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Morton v. State*, No. 2016-KA-00804-COA, 2017 WL 5614958, at *6 (¶27) (Miss. Ct. App. 2017) (quoting *Williams v. State*, 73 So. 3d 1125, 1129 (¶12) (Miss. 2011)). Our supreme court has also held that "there is no constitutional right

to errorless counsel." *Conway v. State*, 48 So. 3d 588, 593 (¶7) (Miss. Ct. App. 2010); *see also Stack v. State*, 860 So. 2d 687, 696 (¶20) (Miss. 2003). We are of the opinion that the record does not convey that Phinizee's trial counsel had any reason to believe that Phinizee was unable to stand trial and assist with his defense.

¶15. During the oral argument, Phinizee maintained that in his opinion, he was never afforded a competency hearing. He asserts that the bifurcated hearings did not properly serve as a competency hearing. We disagree. Phinizee was examined by two experts to determine whether or not Phinizee was competent to stand trial. This Court has held that "the purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact." *Walton v. State*, 233 So. 3d 909, 912 (¶14) (Miss. Ct. App. 2017). As a result, we find that the bifurcated hearings properly served to determine whether Phinizee was competent to stand trial.

¶16. Further, Phinizee maintains that the trial judge's findings contradicted the expert opinions provided by both experts. As a result, Phinizee alleges that the circuit court made a biased and unsubstantiated determination that he was competent to assist his attorney during his trial. We disagree.

¶17. Dr. Brodsky examined Phinizee in May 2013. Dr. Brodsky testified that Phinizee could not read at all and did not demonstrate effective comprehension. The IQ tests reflected that Phinizee scored in the range of someone with mental retardation. As a result, Dr. Brodsky concluded that based upon Phinizee's major impairments and intellectual

7

disabilities, he was unable to understand and assist in his defense during his trial.

¶18. However, Dr. Storer testified that while Phinizee had intellectual disabilities and certain deficiencies, he was unable to give an opinion with reasonable certainty that Phinizee was unable to understand and assist in his defense. However, Dr. Storer stated that it was his opinion to a reasonable degree of psychological certainty that he was not suffering from a mental disease or defect that could have interfered with Phinizee's ability to know the difference between right and wrong in relation to the crimes for which Phinizee was convicted. Dr. Storer voiced that his testimony was based on the fact that no one performed an examination of Phinizee in 2006 to determine whether he was competent to stand trial. Dr. Storer stated that "competency to stand trial has to be assessed at a specific time in a specific situation."[2]

¶19. This Court addressed similar issues regarding competency and a trial judge's observations in *Brasso*, 195 So. 3d at 867 (¶33). The dissent in *Brasso* noted "that the U.S. Supreme Court has stated that mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial." *Id*. at 866 (¶40) (Wilson, J.,

---

[2] Dr. Storer testified that the Mississippi Supreme Court had already decided that one could not determine whether someone was competent retroactively. However, the Supreme Court has recently held that "a trial court's competency evaluation order does not in and of itself conclusively (or necessarily) establish, for purposes of Rule 9.06's mandates, or appellate-review purposes, that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial." *Pitchford v. State*, 240 So. 3d 1061, 1069 (¶42) (Miss. 2017). "Such a determination must be made based on the facts and circumstances attending each particular case." *Id*. Therefore, retroactive competency hearings avoid due process rights.

dissenting); *see Atkins v. Virginia,* 536 U.S. 304, 318 (2002).[3] We agree.

¶20.    Phinizee "has the burden of showing he is entitled to relief by a preponderance of the evidence." *Kidd v. State*, 221 So. 3d 1041, 1043 (¶8) (Miss. Ct. App. 2016). However, we are of the opinion that Phinizee did not meet that burden. The trial court heard the testimony of both experts after their thorough examinations of Phinizee, but the trial court was not persuaded by the testimony of Phinizee's expert witness. As a result, the trial court rejected Dr. Brodsky's testimony regarding Phinizee's competency and found that Phinizee was competent to stand trial in 2006.

¶21.    The trial court also took into account that Phinizee was able to manage Bernard's Pool Hall for a number of years. This Court must note that Phinizee filed his PCR motion alleging ineffective assistance counsel. Phinizee's trial counsel testified that Phinizee cooperated with him and he saw no signs of incompetency. The trial court heard the testimony presented and made a ruling. "[D]eference is given to the trial court as the sole authority for determining credibility of the witnesses." *Walton*, 233 So. 3d at 911 (¶9).

¶22.    As a result, the trial court found that there was no evidence presented to support Phinizee's assertion that he received ineffective assistance of counsel. Accordingly, we find no error.

¶23.    **AFFIRMED.**

---

[3] In *Atkins*, the U.S. Supreme Court held "that [capital] punishment [wa]s excessive and that the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender." 536 U.S. at 321 (internal quotation marks omitted).

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**